TOMLINSON *against* LEAVENWORTH and others :

IN ERROR.

*A., B.* and
*C.,* select-
men of the
town of *H.,*
brought an

THIS was an action on the statute " *to prevent encroach-ments on highways,*"(a) brought by *Leavenworth* and others, as select-men of the town of *Huntington,* against *Tomlinson,*

action on the statute " to prevent encroachments on highways," (*tit.* 57.) to recover the expenses of giving notice to the defendant, and of throwing down and removing an encroachment, pursuant to the statute ; alleging, that *the defendant erected a fence on and across a certain public highway in the town of H. so as to enclose and take into the defendant's field or enclosure a part of said highway.* Held, that the plaintiffs, in this transaction, did not act as the agents of the town, and that the town was not interested in the event of the suit.

(a) *Stat. Conn.* tit. 57. The three first sections of the statute referred to, are as follows : 1. " That if any person hath, within the space of fifteen years, taken, or shall take, any part of any highway, or common, or undivided land into his field or enclosure ; or erect any fence thereon, in such manner that the said highway is straitened, and made narrower than before ; or any part of the common or undivided land is encroached upon ; the select-men of the town wherein the offence is committed, or a committee appointed by such town for that purpose, or a committee appointed for that end, by the proprietors of the common or undivided land encroached upon, (which committee such town and proprietors are enabled to appoint) or any three of such proprietors, are hereby directed and empowered to give notice or warning to the person or persons so offending, to remove, or cause to be removed, such fence or encroachment, within such convenient time as the said select-men, committee, or proprietors shall appoint, not exceeding one month after such notice.

2. " And if the person or persons warned as aforesaid, do not cause such fence or encroachment to be removed within the time so limited, it shall be lawful for the said select-men, committee, or the said three proprietors, to remove the same.

3. " And the person who made such encroachment shall pay to such select-men, committee or proprietors, the charge of such warning, and throwing down and removing such encroachment ; to be recovered by action, before any court proper to try the same."

before *Abel French*, Esq. a justice of the peace for *Fairfield* county. The declaration alleged, that the defendant, on the 15th of *May*, 1817, erected a fence on and across a certain public highway leading from *Zoar* bridge, a bridge across *Ousatonnick* river, to the centre of *New-Stratford* in said *Huntington*, near the defendant's dwelling house in said *Huntington*, so as to enclose and take into the defendant's field or enclosure a part of said highway ; that the plaintiffs, on the next day afterwards, being then select-men of the town of *Huntington*, gave notice to the defendant to remove, or cause to be removed, said fence or encroachment, within twenty-days from that time, which he neglected and refused to do ; that on the 7th of *June* following, the plaintiffs, being select-men as aforesaid, threw down and removed from the highway said fence or encroachment ; and that the expenses of giving such notice, and of throwing down and removing such encroachment, amounted to seven dollars ; which the plaintiffs sought to recover.

The defendant pleaded in abatement, that the justice before whom the suit was brought, was an inhabitant of the town of *Huntington*, and had real and personal estate in said town liable to taxation ; and that he was, therefore, interested in the event of the suit, and incompetent to try the same. The justice decided, that this plea was insufficient, and ordered the defendant to answer over. Final judgment being rendered against him, the defendant brought a writ of error in the superior court ; and the judgment of the justice being there affirmed, the present writ of error was brought.

*Sherman* for the plaintiff in error.

*Chapman* for the defendants in error.

SWIFT, Ch. J. The question is, whether the justice of the peace was interested ; and this depends upon the question whether the town had any interest in the matter in dispute.

It appears by our statute laws, that towns are obliged to defray the expense of laying out roads ; to appoint surveyors to keep them in repair ; and to authorise the select-men to lay the town into districts. When a highway, which it is the duty of a town to maintain and repair, shall not be kept in good and sufficient repair, the county court, on com-

*Hartford,*
November,
1817.

Tomlinson
*v.*
Leavenworth

plaint made, may order necessary repairs, and grant a warrant against the select-men of the town to collect the expense. This is all the duty imposed by statutes on towns respecting highways.

The statute has constituted the erecting or making of a nuisance in highways, an offence that may be prosecuted by a common informer, and has authorised any private person to remove obstructions to the passing of highways, but has imposed no duty on the town.

The statute against encroachments has authorised and empowered the select-men, after a month's warning, to remove them, and to recover the expense from the persons who have made them ; but no duty is any where imposed upon a town to cause them to be removed. The only duty of towns, then, respecting highways, is to keep them in repair ; and they are under no obligation to remove encroachments, as such.

When the legislature empowered select-men to remove encroachments, they could not have considered them as officers of the town ; for this was not the duty of the town. The term " select-men" is only a description of the persons the legislature thought proper to designate ; they are not constituted the agents of the town, but of the public, or, of the law ; and they can have no claim on the town for their services, without an express provision for that purpose.

Further, the statute has provided a mode by which they are to be reimbursed their expense ; and this precludes any right to demand it of the town.

It is said, however, if they should fail to recover it in this mode, they would be without remedy ; and it would be unjust that they should be directed to perform services, and have no means of obtaining a compensation. But I apprehend, the statute is not imperative. It merely provides, that it shall be *lawful* for them to remove encroachments ; that they shall have *the power* to do it ; and this renders it *optional* with them to do it, or not.

But, admitting the statute to be imperative ; this cannot be a reason why they should charge the expense against a community, who are under no obligation to see the service performed. They may as well charge the expense against a society, or school district, within the limits of which, an encroachment has been removed.

But the principal argument is, that it appears from the declaration, this is such an obstruction of the highway as to prevent travelling ; and that it was the duty of the town to remove it, by the act requiring them to keep highways in good and sufficient repair.

It does not, however, appear from the declaration, that this was any thing more than an encroachment ; or that it was such an injury to the highway as obliged the town to remove it, in order to repair the road. Nor does it appear, that this was a road which the town were obliged to keep in repair ; for it may have been a turnpike road, which the turnpike company were obliged to repair. At most, it could only be a nuisance, which any individual could remove.

But admitting this encroachment had been such an injury to the highway, that the town were bound to repair it ; then it was optional with the select-men, either to repair it, and charge the town, or pursue the steps of the statute, remove it as an encroachment, and call on the persons who had made it, to pay their expenses. But when they have made their election, they cannot pursue both remedies ; they cannot proceed on the statute against the persons making the encroachment, and then, on failure, turn round against the town ; but this proceeding is conclusive evidence that they incurred this expense, not under the statute for repairing highways, but under the statute against encroachments, and will be a perpetual bar against any demand on the town.

I am of opinion, that there is no error in the judgment complained of.

In this opinion, TRUMBULL, EDMOND, SMITH, BRAINARD and GODDARD, Js. concurred.

BALDWIN, J. The first question in this case is, whether the town has an interest in the event of this suit ? If so, whether the nature of the action is such, that a justice of the same town can try it, notwithstanding such interest ?

To determine whether the town has an interest, we ought to look further than the statute in question.

It is a principle, running through our system of laws on that subject, that the several towns shall furnish all needful highways for public travel. It is made the duty of

*Hartford,*
November,
1817.

Tomlinson
*v.*
Leavenworth

the select-men to lay them out; and if they neglect, or refuse, the county court will do it; but, in both cases, at the expense of the town. Such highways must be laid out of a suitable width; and if not otherwise made, and repaired, and protected in width, the town can be compelled to do it. Towns have, then, a direct interest in protecting from encroachments, the highways, which they have thus paid for, and are bound to furnish. It would seem, then, that without the aid or direction of any particular statute, but by virtue of their general powers " to take care of and order the prudential affairs of the town" and guard their interests, it would be the duty of the select-men, to see that encroachments were not made on, or if made, that they should be removed from, highways. To aid them in this duty, the statute respecting encroachments was made. It imposes no new duty, but gives the option of a more speedy and sovereign remedy. The select-men, acting under this law, are still acting for the benefit of the town, to secure its interest, and protect its rights; and for the benefit of the town, they are authorised to collect the expense from the person making the encroachment. But suppose that from insolvency, or other cause, they fail to obtain compensation for their services in the mode pointed out by the statute; is not the town whose agents they are, and for whose benefit they have done the service, liable to make them compensation? I think it is.

I know it is said, that they are the agents of the *law;* and acting in that capacity, the town is not liable to compensate them. To this I answer, that the select-men receive all their powers by the various laws respecting them. The duties imposed upon them, are various and extensive. It cannot be claimed, that they are to discharge them without compensation; and I know of no other or better rule, than the one in universal practice, that the party for whose benefit they act shall yield them their compensation.

In this case, the town receive the immediate benefit; and if compensation cannot be obtained in the mode pointed out by the statute, it seems to me, that the town is, and ought to be, liable. I am, therefore, of opinion, that the town is interested in the event of this suit.

The next question then occurs, whether a justice of the town can try a cause in which the town is interested.

As a general rule, the law will not countenance an interested judge, or witness; but it is more strict in the exclusion of a judge, than a witness. Members of located corporations, are often admitted as witnesses from necessity. That necessity never extends to a judge, except where the state is a party. In criminal cases, where the offence is punishable by fine, I agree, that usage has sanctioned the jurisdiction of a justice, where the fine is payable into the treasury of the town to which he belongs. This usage is, however, opposed to principle, and ought not to be extended; and it never was, to my knowledge, extended to civil suits in which the town was a party, or had an interest.

I am of opinion that the justice could not try the cause; and that there is manifest error in the record.

HOSMER, J. was of the same opinion.

GOULD, J. In my opinion, the town of *Huntington* is interested in the event of the suit; and the judgment is, therefore, erroneous. And the ground of this opinion is, that the removal of the obstruction in question, by the defendants in error, was in discharge of a duty, *imposed by law upon the town,* and which it was their duty, as select-men, to perform in the town's behalf.

By the general law of the state, each town is bound to keep in repair, all public highways, within its own limits: and though, in particular instances, this obligation is transferred, for a time, to turnpike companies; yet, these are only excepted cases, under special acts of incorporation; and therefore, such a transfer of the obligation is never to be presumed. *Prima facie,* the duty belongs to the towns. And this is a sufficient answer to the suggestion, that the highway in question does not appear, from the record, to be one of those, which it is the duty of towns to keep in repair. From its being a *public* highway, that fact is to be presumed.

Now, the duty of a town to keep a highway in repair, includes an obligation to do all that is necessary, to render the road, not only passable, but convenient for travelling. It, therefore, extends to the removal of all obstructions, which impede public travel, or which render it dangerous, difficult, or inconvenient. In the present instance, the

Tomlinson
*v.*
Leavenworth

obstruction, while it continued, rendered travelling, over that part of the road, in which it was raised, impossible. Surely, then, if it had not been removed, the town would have been liable to a prosecution. (*Stat. Conn. tit.* 86. *c.* 2. *s.* 3.) For if it is not the duty of towns, to render highways passable, when there is no pretence, that the obligation rests elsewhere; it is plain, that the duty does not exist at all : and our public roads may all be blocked up, and continue so, unless individuals will voluntarily open them at their own charge.

Much has been said about the distinction between *encroachments* and *nuisances,* under our statute-law; and it has been contended, that this action is brought upon the statute against *encroachments,* which will not support it. This is rather a verbal exception, than any thing else. The facts disclosed show, that the obstruction was a *nuisance :* as it extended across the whole highway, and rendered it impassable. And there is no propriety in saying, that the action is founded upon the statute against encroachments. To declare upon a statute, or in any other way to plead it, is merely to state such facts, as bring a case within it. And the facts, alleged in this declaration, clearly bring the case within the statute against nuisances, but not within that against encroachments.

Had the defendants in error, then, as select-men, authority by law, to act, and did they act, as agents of the town? A town can do an act of this kind, only by its agents; and its select-men are, by statute, *ex officio,* its agents for the purpose. (*Stat. Conn. tit.* 86. *c.* 2. *s.* 3.) If, therefore, as I have endeavoured to show, it was the town's duty to render the road passable, and convenient for travelling; it was, of course, the duty of the defendants in error, as select-men, to perform the service necessary to that end, in behalf of the town. They were *bound,* by a statute of the state, to do it, to save the town from a prosecution (*Stat. Conn.* ub. sup.); and they have done it. And if they fail in this suit, they have, of course, a right to resort to the town for indemnity. To deny them all compensation for their trouble and expense, except what they may be able to obtain from the wrong-doer, would be, in the highest degree, unjust. He may not be discovered, or he may be insolvent. Are select-men, in all such cases, to be left without any indemnity? If not, they

must have it from the town; for they certainly cannot obtain it from any other quarter.

But select-men, according to this doctrine, it is said, may render towns liable, in this manner, *ad libitum*. By no means. The question, whether their services, in any particular instance were necessary, and whether their charges are reasonable, is open to investigation, as unliquidated claims are, in all other cases.

The act, done by these select-men, has been compared to that of a constable, in executing legal process—in which case, it is said, and said truly, that he has no claim upon the town, which appointed him, for his services. But there is no similitude between the two cases. The distinction is between those acts, which are imposed, as legal duties upon towns, and those, which are not. A constable is, for most purposes, not an agent of the town, by which he was appointed, but an officer of the law. In serving process, he executes no duty, which does, or can, appertain to a town; nor does he act, in any sense, as its representative, or agent. But select-men, as such, in bestowing necessary labour or expense upon a public highway, act as much in discharge of a town duty, and in the character of town agents, as in furnishing supplies to a pauper. And they have, of course, the same claim upon the town for indemnity, in the former case, as in the latter.

The town of *Huntington*, therefore, in the present case, and of course, the justice, who rendered the original judgment, have an immediate interest in the event of the suit.

Judgment affirmed.