DAVID E. KOSKOFF *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF HADDAM ET AL.
(10594)

NORCOTT, LAVERY and HEIMAN, Js.

Argued January 7—decision released April 28, 1992

*David E. Koskoff,* pro se, the appellant (plaintiff).

*Thomas P. Byrne,* for the appellees (defendants).

NORCOTT, J. The plaintiff landowner appeals from the trial court's denial of his request for an order of mandamus to compel the defendants, the Haddam planning and zoning commission and its chairman, to approve a subdivision. He claims that the trial court failed to find that the commission's failure to act within the sixty-five day period allowed by General Statutes § 8-26d (b)[1] results in automatic approval of his subdivision application. We reverse the judgment of the trial court.

The following undisputed facts are pertinent. On August 14, 1989, the plaintiff applied to the commis-

---

[1] General Statutes § 8-26d (b) provides: "A decision on an application for subdivision approval, on which no hearing is held, shall be rendered within sixty-five days after receipt of such application. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed sixty-five days."

sion for approval of an eight lot subdivision. On October 9, 1989, the plaintiff agreed in writing to extend to December 4, the time within which a public hearing on his application could be conducted. Notice of the public hearing was then published in a newspaper on November 24, 1989, and again on December 1, 1989. The public hearing commenced on December 4, and was continued to December 18. On February 21, 1990, the commission voted to deny the application. Notice of that decision was then timely published in a newspaper on March 7, 1990.

On March, 19, 1990, the plaintiff appealed the decision to the trial court. On August 27, 1990, the plaintiff commenced a separate action in the trial court for an order of mandamus to compel the chairman of the commission to approve the subdivision map. On August 15, 1991, the trial court sustained the plaintiff's appeal, holding that the failure to publish notice of the hearing in the proper manner invalidated the commission's decision. In the mandamus action, the trial court denied the plaintiff's request to compel approval. This appeal followed.

The plaintiff claims that the trial court improperly determined that the commission's denial of the application did not constitute nonaction within the meaning of General Statutes § 8-26 because, the plaintiff asserts, the commission lacked authority to act as a result of its failure to publish timely notice of the December 4, 1989 hearing. Therefore, the plaintiff claims, the subdivision application was subject to automatic approval pursuant to the requirements of General Statutes §§ 8-26 and 8-26d (b).

We note at the outset that the parties agree that notice was defective under General Statutes § 8-26[2]

---

[2] General Statutes § 8-26 provides in pertinent part: "No plan of resubdivision shall be acted upon by the commission without a public hearing.

because it was not published eleven days prior to the hearing. We nevertheless must address this issue because publication of notice implicates the subject matter jurisdiction of the defendant, which directly bears on the result we reach in this case.

"Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. . . . The same principle applies to administrative agencies . . . including zoning authorities." (Citations omitted; internal quotation marks omitted.) *Lauer* v. *Zoning Commission,* 220 Conn. 455, 460, 600 A.2d 310 (1991), quoting *Caserta* v. *Zoning Board of Appeals,* 219 Conn. 352, 358, 593 A.2d 118 (1991).

Whether failure to give notice affects subject matter jurisdiction depends on who is to be notified. When the notice contemplated is personal, failure to issue such notice does not affect subject matter jurisdiction. *Lauer* v. *Zoning Commission,* supra, 462; see *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 362 A.2d 519 (1975). When the notice required, however, is constructive notice to the general public by means of legal advertisement, failure to issue such notice properly is a defect implicating subject matter jurisdiction. *Lauer* v. *Zon-*

Notice of the public hearing shall be given by publication in a newspaper of general circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days prior to the date of such hearing . . . . The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith . . . within the period of time permitted under section 8-26d. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality . . . . Such notice shall be a simple statement that such application was approved, modified and approved or disapproved, together with the date of such action. The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand. . . ."

*ing Commission,* supra, 461; see, e.g., *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 44, 301 A.2d 244 (1972) (failure to publish notice in newspaper pursuant to General Statutes § 8-3 constitutes jurisdictional defect); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721 (1971) (insufficient published notice to general public constitutes due process violation and, therefore, is jurisdictional defect); *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 137 A.2d 542 (1957) (publication of notice in newspaper of hearing constitutes jurisdictional defect when published only three days before hearing); *Winslow* v. *Zoning Board,* 143 Conn. 381, 122 A.2d 789 (1956) (inadequate public notice constitutes jurisdictional defect); *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552 (1955) (inadequate publication of notice of public hearing in newspaper is jurisdictional defect); *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201 (1951) (failure to give proper notice constitutes jurisdictional defect).

Strict compliance with statutory mandates regarding notice to the public is necessary because "[i]n the absence of newspaper publication, unknown individuals with an interest in zoning matters would have no way of learning what zoning decisions were being contemplated." *Lauer* v. *Zoning Commission,* supra, 462; *Schwartz* v. *Hamden,* 168 Conn. 8, 15, 357 A.2d 488 (1975). Even if the complaining party appears at the public hearing, "[f]ailure to provide such notice deprives the administrative tribunal of subject matter jurisdiction . . . since the legislative intent to notify the public constructively would otherwise be frustrated." (Internal quotation marks omitted.) *Lauer* v. *Zoning Commission,* supra, quoting *Schwartz* v. *Hamden,* supra.

Here, the notice contemplated by General Statutes § 8-26 implicates subject matter jurisdiction because it

aims to give constructive notice to the general public about possible zoning actions. The statute requires publication of such notice "not more than fifteen days, nor less than ten days" before the hearing commences. Our Supreme Court has interpreted the phrase, "nor less than ten days," to mean that notice must be published *eleven* days prior to the hearing. *Lunt* v. *Zoning Board of Appeals,* 150 Conn. 532, 536, 191 A.2d 553 (1963); *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 139, 139 A.2d 601 (1958). Because General Statutes § 8-26 was not strictly complied with when notice was published only ten days prior to the December 4, 1989 hearing, the commission lacked jurisdiction, thereby rendering the hearing invalid. See *Lauer* v. *Zoning Commission,* supra, 464; *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 44.

We must decide next what consequences attach when a municipal zoning entity conducts a hearing subsequently found to be invalid because of failure to comply with statutory requirements for prehearing notice.

Since colonial days, local government has been conducted in town meetings where the will of the people is given expression. It has been well settled since the early nineteenth century that any action taken in a town meeting is without legal effect when statutory provisions as to notice prior to the meeting are not complied with. *Hayden* v. *Noyes,* 5 Conn. 391, 396 (1824); see also *Pinney* v. *Brown,* 60 Conn. 164, 168–69, 22 A. 430 (1891), and cases cited therein. This same longstanding principle has been repeatedly applied in the context of actions taken by administrative tribunals, such as zoning bodies. See *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 518, 418 A.2d 883 (1979); *Mauriello* v. *Board of Education,* 176 Conn. 466, 471, 408 A.2d 247 (1979); *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 44–45; *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 109; *Aurora* v.

*Zoning Board of Appeals,* 153 Conn. 623, 625–26, 220 A.2d 277 (1966); *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325, 207 A.2d 58 (1965); *Treat* v. *Town Plan & Zoning Commission,* supra, 139; *Winslow* v. *Zoning Board,* supra, 388; *Smith* v. *F. W. Woolworth Co.,* supra, 94; *Couch* v. *Zoning Commission,* 141 Conn. 349, 356, 106 A.2d 173 (1954); *Hutchison* v. *Board of Zoning Appeals,* supra, 251; *Hartford Trust Co.* v. *West Hartford,* 84 Conn. 646, 650, 81 A. 244 (1911); *Bombero* v. *Planning & Zoning Commission,* 17 Conn. App. 150, 154, 550 A.2d 1098 (1988); *Edelson* v. *Zoning Commission,* 2 Conn. App. 595, 599, 481 A.2d 421 (1984).

For more than a century, our Supreme Court has recognized that when action by a municipal entity is subsequently found to be invalid, it is as if that entity never met or voted. In *Brooklyn Trust Co.* v. *Hebron,* 51 Conn. 22 (1883), our Supreme Court held that no town meeting occurred nor was any vote taken because notice issued prior to the meeting failed to comply with the mandate of the applicable statute. Id., 29. The court held that because notice was insufficient, "[t]here was therefore no lawful meeting . . . and of course no vote. . . . [T]here is absolutely nothing to consider." Id. In other words, the meeting was void ab initio— "[f]rom the beginning" or "from the first act." Black's Law Dictionary (5th Ed.).

The same reasoning applies with equal force in the matter at hand. Because notice of the December 4, 1989 hearing failed to comply with the mandate of General Statutes § 8-26, no hearing occurred and no vote was taken. Nevertheless, General Statutes § 8-26d (b) provides that when no hearing is conducted, the commission must act within sixty-five days after receipt of the application. Section § 8-26d (c) defines receipt as "the day of the next regularly scheduled meeting of such commission . . . immediately following the day of submission to such . . . commission . . . or thirty-five

days after submission, whichever is sooner." *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 312, 592 A.2d 953 (1991). The plaintiff submitted his application on August 14, 1989. Nothing in the record, however, indicates when the commission's next regularly scheduled meeting was to be conducted. Yet, regardless of whether the date of receipt was August 14, September 18, which was thirty-five days later, or December 4, 1989, the commission did not act until February 21, 1990, well beyond the sixty-five day limit prescribed in § 8-26d (b). See *Viking Construction Co.* v. *Planning Commission,* 181 Conn. 243, 247–48, 435 A.2d 29 (1980). We therefore conclude that the plaintiff's application was automatically approved under § 8-26 as a result of the commission's nonaction.

Although the commission relies on *Farr* v. *Eisen,* 171 Conn. 512, 370 A.2d 1024 (1976), for the proposition that failure to publish proper notice is not the legal equivalent of approval by nonaction within the meaning of General Statutes § 8-26, such reliance is misplaced for two reasons. First, *Farr* declared that "it is the failure of the commission to render a decision within sixty-five days of the public hearing, rather than an absence of publication, which triggers 'the nonaction approval provisions' of the statute." Id., 515–16; see also *Merlo* v. *Planning & Zoning Commission,* 196 Conn. 676, 683, 495 A.2d 268 (1985) ("[i]t is the 'failure of the commission to act' upon an application within the time provided that results in approval by operation of law under § 8-26"). Second, *Farr* is inapposite because it involved failure to publish *postdecision* notice, whereas this case concerns defective *prehearing* notice.

Although the commission intimates that this is a distinction without a difference, such is not the case. Because prehearing notice was proper in *Farr,* the commission's decision had legal effect and constituted

"action." *Farr* v. *Eisen,* supra, 516. It did not become null and void until the commission failed to publish postdecision notice. Id., 515. In this case, however, the commission never "acted" in the first place because its failure to publish prehearing notice in compliance with General Statutes § 8-26 rendered its subsequent doings void ab initio. As the *Farr* court stated, "There is a marked difference between 'non-action' and an action which is ultimately declared 'null and void.' Nothing can be declared void if it was not first in existence." Id., 516. In *Farr,* valid "action" existed that subsequently was declared null and void. By contrast, in the matter before us today there was nonaction from the outset as a result of the defective prehearing notice.

The centerpiece of the dissent's dissatisfaction with the result we reach is that the word "hearing" in General Statutes §§ 8-26 and 8-26d is ambiguous with respect to whether it presupposes that a zoning commission has subject matter jurisdiction, and that the legislature intended it to be used in a "lay sense" that connotes a proceeding in which there is " 'an opportunity to be heard, to present one's side of a case or to be generally known or appreciated.' " Such an interpretation, the dissent claims, furthers the legislature's purpose regarding the automatic approval provision of § 8-26 by deterring zoning commissions from delaying action on subdivision applications. Yet, the dissent simultaneously dismisses the prehearing notice mandate of § 8-26, arguing that defective notice cannot change the fact that a hearing was held.

First, the dissent offers no legal authority or legislative history for its claim that the legislature intended the term "hearing" to be interpreted in a "lay sense." In fact, such an interpretation directly contradicts our Supreme Court's repeated and unequivocal pronouncements as to what it means, in various contexts, to have a hearing. "A 'hearing' is generally defined as a

'[p]roceeding of relative formality . . . generally public, with definite issues of fact and of law to be tried, in which . . . *parties proceeded against have [a] right to be heard* . . . .' (Emphasis added.) Black's Law Dictionary (5th Ed.)." *Herman* v. *Division of Special Revenue,* 193 Conn. 379, 382–83, 477 A.2d 119 (1984); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 469, 378 A.2d 547 (1977); *Leabo* v. *Leninski,* 9 Conn. App. 299, 302, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987).

"A hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or, of course, it can be a combination of the two. . . . Not only does a hearing normally connote an adversarial setting, but usually it can be said that it is 'any *oral* proceeding before a tribunal.'" (Citations omitted; emphasis added.) *Rybinski* v. *State Employees' Retirement Commission,* supra, 469–70. Our Supreme Court has "consistently recognize[d] the generally adversarial nature of a proceeding considered a 'hearing,' in which witnesses are heard and testimony is taken. See, e.g., *Lawrence* v. *Kozlowski,* 171 Conn. 705, 708, 372 A.2d 110 (testimony and exhibits presented at departmental hearing); *State* v. *White,* 169 Conn. 223, 229, 363 A.2d 143 (preliminary hearing for revocation of probation, defendant's personal appearance, testimony of witnesses); *Armstrong* v. *Zoning Board of Appeals,* 158 Conn. 158, 163, 257 A.2d 799 (public hearing, zoning commission heard evidence and arguments); *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 311, 254 A.2d 486 (hearing to permit interested persons 'to express their views')." *Rybinski* v. *State Employees' Retirement Commission,* supra, 470.

Nowhere, however, has our Supreme Court held that a "hearing" in which the rights of the parties are bound is a hearing in the "lay sense" argued for by the dis-

sent. When a zoning commission hears witnesses and arguments for and against a subdivision, then makes a decision that binds the parties, as it did in this case, such a "hearing" is much more than a mere " 'opportunity to be heard,' " as the dissent claims. It is a formal proceeding in which definite issues of fact and law are decided; *Herman* v. *Division of Special Revenue,* supra; requiring that the zoning commission conducting the hearing first have jurisdiction over the subject matter. *Lauer* v. *Zoning Commission,* supra, 460.

Second, the dissent's interpretation of the term "hearing" does not further the legislature's purpose in deterring administrative foot dragging because it reads out of the statutes any and all meaning and force contained in the prehearing notice requirement. In the dissent's view, no consequences attach when defective notice is the result of a "simple mistake" not made "intentionally or in bad faith." We disagree for at least three important reasons. First, as stated previously, our Supreme Court has mandated strict compliance with statutes that require prehearing notice to the public. See id., 462. Second, such compliance directly implicates a commission's subject matter jurisdiction and thus impacts on whether there can be a legally cognizable hearing. Id., 464; *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 44. Finally, the dissent's view implies that our courts in the future will be free to impose a bad faith requirement before activating the statute's prehearing notice and automatic approval provisions. It is not the province of a court, however, to read into statutes obligations not intended by the legislature. *State* v. *Guckian,* 27 Conn. App. 225, 243, 605 A.2d 874 (1992) (en banc). If the legislature had intended to impose a bad faith requirement, "it certainly was aware of the explicit language with which it could do so . . . and it could have explicitly so pro-

vided." (Citations omitted; internal quotation marks omitted.) Id. In this case, the legislature clearly did not impose any bad faith requirement.

Moreover, by dismissing the effect of the prehearing notice mandate, the dissent ignores well settled principles of statutory construction. It is hornbook law that no word or phrase in a statute is to be rendered mere surplusage. *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 104, 596 A.2d 374 (1991). A statute is to be construed as a whole in an effort to reconcile all of its parts. *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 751, 601 A.2d 1005 (1991). We disagree with the claim that there are no consequences when defective prehearing notice is the result of a "simple mistake."

Finally, although the dissent is dissatisfied with the result we reach because our zoning statutes appear to work against those whom they are intended to protect, it is not for this court to undo by judicial fiat what our zoning statutes require. It is properly within the power and will of the legislature to amend the statutes to accomplish the ends described by the dissent.

The judgment is reversed and this case is remanded with direction to render judgment granting a writ of mandamus to compel the defendants to approve the plaintiff's subdivision application.

In this opinion LAVERY, J., concurred.

HEIMAN, J., dissenting. I respectfully dissent. Because I believe that a hearing was held for the limited purpose of determining which of the time limits set forth in General Statutes § 8-26d applies, I would affirm the trial court's judgment.

The narrow question presented by this appeal is whether the commission held a hearing for the purpose

of determining which of the time limits for commission action, set forth in General Statutes § 8-26d, controls this case. The plaintiff claims that the trial court improperly found that a hearing was held, and, on the basis of this finding, improperly applied the time limit for commission action set forth in § 8-26d (a). He claims that because no hearing was held, the time limit set forth in § 8-26d (b) applies. The plaintiff concedes that if the commission held a hearing, the time limit set forth in § 8-26d (a) controls this case and the commission acted in a timely manner. He further concedes that, conversely, if no hearing was held, the controlling time period was the shorter period set forth in § 8-26d (b) and the commission's action was late. Thus, the issue as to whether the commission's February 21, 1990 vote to deny the plaintiff's application constituted "action" for the purpose of the automatic approval statute is not before us. The only issue presented is whether a hearing was held.

Although the majority correctly states that the defect in newspaper notice deprived the commission of subject matter jurisdiction, it incorrectly concludes that the absence of subject matter jurisdiction requires a conclusion that no hearing was held. See *Lauer* v. *Zoning Commission,* 220 Conn. 455, 460, 600 A.2d 310 (1991). In each of the cases cited by the majority in which newspaper notice was defective, the lack of subject matter jurisdiction rendered the particular agency's substantive decision void. Id.; *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 44, 301 A.2d 244 (1972); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721 (1972); *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 137 A.2d 542 (1957); *Smith* v. *F. W. Woolworth,* 142 Conn. 88, 94, 111 A.2d 552 (1955); *Hutchinson* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201 (1951). I agree with the majority's state-

ment that, where a commission lacks jurisdiction over the subject matter, it cannot bind the rights of the parties by its vote. In this case, however, the majority expands the doctrine of subject matter jurisdiction not only to void the commission's decision to deny the plaintiff's application, but to support its conclusion that the commission held no hearing on the plaintiff's application for the purpose of § 8-26d. I believe, as a matter of statutory construction, that because the fact that a hearing was held is in itself legally relevant, separate from the outcome of that hearing, a defect in notice does not change the fact that a hearing was held for the purpose of determining which time limit for commission action applies. See General Statutes §§ 8-26 and 8-26d.

The principal canon of statutory construction is that where the statutory language is clear and unambiguous, we interpret the statute to mean what it says. *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310, 592 A.2d 953 (1991). Under such circumstances, we will look no further for interpretive guidance. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 666, 560 A.2d 975 (1989). Section 8-26 states in pertinent part: "The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. No plan of resubdivision shall be acted upon by the commission without a public hearing. . . . The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application . . . within the period of time permitted under section 8-26d. . . . The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand. . . ." Section 8-26d (a) sets forth the time limit within which the commission must take action in the event that "a

hearing is held on such application." Section 8-26d (b) sets forth a separate time limit where "no hearing is held . . . ." The statutes are silent, and therefore ambiguous, regarding whether the "hearing" referred to in § 8-26d presupposes that the commission has subject matter jurisdiction to hold the hearing, or whether the word "hearing" is used simply in its lay sense of an adversarial proceeding, usually public, in which the parties are afforded an opportunity to be heard; see *Herman* v. *Division of Special Revenue,* 193 Conn. 379, 382–83, 477 A.2d 119 (1984); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 469–70, 378 A.2d 547 (1977); *Leabo* v. *Leninski,* 9 Conn. App. 299, 302, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987); Black's Law Dictionary (5th Ed.); or an "opportunity to be heard, to present one's side of a case, or to be generally known or appreciated." Webster, Ninth New Collegiate Dictionary.

Because the statute is ambiguous regarding this issue, we look to its purpose as evidenced by the legislature's intent in enacting it, and strive to interpret the statute in a manner consistent with its purpose. *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 210, 603 A.2d 385 (1992). Although there is no reported legislative history regarding the automatic approval provision of General Statutes § 8-26, the purpose of the provision is obvious: to deter zoning commissions from unduly delaying their consideration and resolution of applications for subdivision approval. Section 8-26d simply grants a commission more time to take action in the event that it chooses to hold a hearing on an application.

In my opinion, the result reached by the majority does not advance this statutory purpose because it applies the automatic approval sanction even where the commission has attempted to act expeditiously. Here, the commission published prehearing notice. Although the

notice was defective because it was published one day late, there is no evidence that the commission acted intentionally or in bad faith. Rather, the early publication appears to be a simple mistake. Further, the commission, acting on the assumption that the time limits governing applications on which a hearing is held applied, complied with all of the remaining provisions of General Statutes §§ 8-26 and 8-26d. The statutes' deterrent purpose would not be served by disrupting the parties' expectations and applying the shorter time limit contained in § 8-26d (b), the practical effect of which is to trigger the automatic approval sanction.

The result reached by the majority defies the purpose of newspaper notice as well. As the majority acknowledges, the purpose of newspaper notice is to give constructive notice to the general public so that unknown individuals with an interest in zoning matters may learn what actions the commission is contemplating and may be heard on such matters. See *Lauer* v. *Zoning Commission,* supra, 462. The majority's anomalous result penalizes the general public by depriving them of their right to be heard on the application because of a defect in meeting a notice requirement designed to safeguard the rights of which they are now being deprived.

Because the majority's excessively technical analysis creates a result that is at loggerheads with the purposes of both the automatic approval and notice provisions of §§ 8-26 and 8-26d, I conclude that the legislature intended the word "hearing" to be interpreted in its lay sense for the purpose of determining which time limit applies. First, a lay interpretation of the term adequately furthers the legislative purpose in deterring commission inaction. Under this interpretation, serious consequences attach whenever prehearing notice requirements have not been complied with strictly because under such circum-

stances a commission is utterly powerless to bind the parties' rights by its vote. Second, this interpretation avoids the anomaly of penalizing the general public due to a defect in newspaper notice intended to protect their interests. Third, a lay interpretation is most consistent with our Supreme Court's decision in *Winchester Woods Associates* v. *Planning & Zoning Commission,* supra. *Winchester Woods Associates* presented the question of whether a zoning commission's vote to deny a resubdivision application constituted "action" for the purposes of the automatic approval provisions of §§ 8-26 and 8-26d, even though the decision constituted an abuse of discretion because it was based on an incomplete examination of the relevant factors. Id., 312–13. Our Supreme Court held that although the commission's decision constituted an abuse of discretion, it nonetheless was "action" for purposes of the automatic approval statutes. Id., 313–14. Thus, even where a decision of the commission is of no legal effect, the fact that the commission took "action" in the lay sense of rendering a decision on the application is sufficient to avoid the automatic approval sanction. Similarly, although the commission is legally unable to bind the parties' rights in a hearing in which it lacks subject matter jurisdiction, the proceeding may still constitute a hearing that is sufficient to avoid the automatic approval sanction.

Finally, the majority's attempts to distinguish *Farr* v. *Eisen,* 171 Conn. 512, 370 A.2d 1024 (1976), are unpersuasive. The majority first notes that "*Farr* declared that 'it is the failure of the commission to render a decision within sixty-five days of the public hearing, rather than an absence of publication, which triggers "the non-action approval provisions" of the statute.' " This statement merely begs the central question here: Was a hearing held so that the time limitation for commission action set forth in General Statutes § 8-26d (a) controls?

The majority next attempts to distinguish *Farr* by pointing out that *Farr* involved a failure to publish postdecision notice, while this case involves a defect in prehearing notice. In *Farr,* our Supreme Court held that the postdecision notice provision is mandatory and that the failure of postdecision notice renders the decision as to which notice should have been given "null and void." *Farr* v. *Eisen,* supra, 515. The *Farr* court further held, however, that the failure of postdecision notice does not vitiate the commission's action for the purpose of avoiding the sanction of automatic approval. Id., 516. In reaching the latter conclusion, the court stated "[t]here is a marked difference between 'nonaction' and an action which is ultimately declared 'null and void.' " Id. The majority seizes on this distinction to support its conclusion that, unlike the commission's action in *Farr,* the commission's action in this case was in essence "nonaction" because the commission lacked subject matter jurisdiction.

I agree that *Farr* does not control our resolution of this case, not on the grounds advanced by the majority, but on the ground that *Farr* addressed only the issue of whether the commission took action. As I stated earlier, this issue is not on our table today. To the extent that *Farr* is analogous, however, the majority's own analysis of newspaper notice and its relationship to subject matter jurisdiction belies their conclusion that *Farr* is distinguishable on jurisdictional grounds. As the majority points out, the issue of whether notice is jurisdictional depends not on whether the notice must be given before or after its corresponding proceeding, but on who is to be notified. When the notice is constructive notice to the general public by newspaper publication, proper notice is a prerequisite to subject matter jurisdiction. The notice in *Farr,* like the notice in this case, was newspaper notice to the general public. General Statutes § 8-26. Just as the defect in newspaper

notice in *Farr* did not, for the purposes of automatic approval, affect the fact that the commission had taken action, the defect in newspaper notice in this case does not affect the fact that a hearing was held.

I conclude that despite the defect in the prehearing newspaper notice, a hearing was held, and, therefore, that the time limit for commission action set forth in General Statutes § 8-26d (a) controls this case. Because this is the only issue presented by the parties, I would affirm the trial court's judgment.